FLORENCE MFG. CO. v. DOWD et al.

(Circuit Court, S. D. New York. June 23, 1909.)

1. TRADE-MARKS AND TRADE-NAMES (§ 3*)—MARKS SUBJECT TO APPROPRIA-
TION—DESCRIPTIVE NAMES.
　　The word "Keepclean" as a name for toilet brushes is descriptive, and
cannot be appropriated as a trade-mark.
　　[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 6; Dec. Dig. § 3.*]

2. TRADE-MARKS AND TRADE-NAMES (§§ 69, 75*)—UNFAIR COMPETITION.
　　To entitle a manufacturer to an injunction to prevent a competitor
from imitating a name used by him to designate his goods which is de-
scriptive, and therefore not a valid trade-mark, the imitation must be
with fraudulent intent or such as is calculated to deceive the public.
　　[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. §§ 80, 86; Dec. Dig. §§ 69, 75.*]

In Equity. On final hearing.

William A. Macleod and George P. Dike, for complainant.
A. Bell Malcomson, for defendants.

HOUGH, District Judge. The bill avers that complainant for a
long time (viz., since about 1895) has appropriated as a distinguish-
ing name or mark for brushes made and sold by it the word "Keep-
clean," and in 1897 registered the same as a trade-mark under Act
March 3, 1881, c. 138, 21 Stat. 502 (U. S. Comp. St. 1901, p. 3401).
It is further averred that this trade-mark "Keepclean" is stamped or
printed, not only upon complainant's brushes or upon tags attached
thereto, but upon the "individual boxes or packages containing the
said brushes." Defendants are charged in the bill with violating com-
plainant's rights by selling within the jurisdiction of this court "brushes
of inferior quality, * * * which are marked with the word 'Sta-
kleen,' and, further, that defendants' inferior brushes are contained
in 'individual boxes, * * * said boxes being made in imitation
of the * * * boxes employed by' complainant. The bill prays
that defendants be enjoined from selling 'brushes * * * marked
or stamped with the word "Sta-kleen," or with any imitation of the
word "Keepclean" which is intended or calculated to deceive,' " and
that an account be taken in the usual way.

The case made by the evidence is hardly foreshadowed by the bill.
It is, I think, proven that for many years the complainant has been
engaged in the manufacture and sale of brushes for toilet purposes.
Its product is large, widely advertised, well known, and extensively
used. Some 14 years ago it introduced to the trade what is called a
"new line of brushes"; i. e., first ordinary hair brushes, then clothes
brushes, military brushes, etc. All these brushes were called "Keep-
clean." Whether designed for one toilet purpose or another, they
possessed and possess certain common characteristics; i. e., they have
black wooden backs and white metal faces, to which the bristles are
attached and from which they project. These "Keepclean" brushes
have been offered for sale in separate boxes, if not from the beginning,

at least for a considerable number of years. The "Keepclean" box has well-defined characteristics, and, whether the box contains one kind of brush or another, it resembles its fellows in general appearance, being oblong, rectangular, of a greenish basic color, with representations thereon of black-backed and white-faced brushes, and prominently exhibiting the word "Keepclean" in red letters on the greenish ground. The complainant's "Keepclean" line of brushes, however, did not include a tooth brush until 1904 or 1905. The evidence on this point is not satisfactory; but upon the whole I am convinced that it was intended to put out a "Keepclean" tooth brush as early as 1903, but the article was not put on the market until the early part of 1905. When offered to the public, the tooth brush was put into, and has since been sold in, boxes uniform in design and general appearance (though of smaller size) to the hair and clothes brush boxes above described, and the tooth brush itself has a black wooden back and a white metal face like the others.

The defendants seem to have at one time contemplated the manufacture and sale of the larger toilet brushes under the "Sta-kleen" mark; but as matter of fact they have (so far as the evidence indicates) manufactured and sold nothing but a tooth brush. This tooth brush is made under a mechanical patent (601,405), and was put on the market and actually sold in 1902 or 1903, and certainly before complainant's "Keepclean" tooth brush was offered to the public. From the beginning defendants have called their tooth brush the "Sta-kleen," and in 1904 they registered "Sta-kleen" as a trade-mark for "toilet brushes." For at least four years the two tooth brushes have been on the market together, and during that time both the parties to this action have endeavored to register "Keepclean" and "Sta-kleen," respectively, as trade-marks under the present act of Congress, and both have been refused on the ground that the words are descriptive.

In my opinion, not only are these words descriptive upon mere consideration of the words themselves, but an examination of the tooth brushes and their history confirms the finding. It is the complainant's object to furnish a metallic face from which the bristles may project, because the metal (apparently aluminum) does not afford easy adherence for particles of dirt; while the patent under which defendants manufacture specifically rests its claim to invention upon an open or reticulated back, which reduces the space for lodgment of dirt to a minimum. The tooth brushes themselves manufactured by the parties to this litigation bear as little resemblance to each other as any two implements designed for the same function can bear, and it has not been asserted in argument that even the most casual purchaser could be deceived into mistaking one for the other if he looked at them.

Complainant's case, therefore, rests on the following propositions: (1) That "Keepclean" is a trade-mark applicable and applied to toilet brushes generally (and inter alia tooth brushes), which trade-mark is infringed by defendants' use of "Sta-kleen." (2) If trade-mark validity be denied to "Keepclean," it must equally be denied to "Sta-kleen"; but complainant has for so many years made the public familiar with "Keepclean" as descriptive of a whole line of brushes that

the use of "Sta-kleen" as applied to a tooth brush only is an unfair endeavor to find a market for defendants' single brush under cover of complainant's reputation for an entire line of toilet brushes. (3) The defendants' brush box is a colorable imitation of the "Keepclean" line of boxes, and this not only constitutes unfair competition in respect of the sale of tooth brushes, but is also conclusive in favor of complainant's second proposition above stated.

As to the first contention, while I am of opinion that, if "Keepclean" were a valid trade-mark, "Sta-kleen" would be an infringement, it seems too plain for argument that under the evidence above set forth neither of the trade-names under consideration is a good trade-mark as applied to toilet brushes of any variety.

The second and third propositions are so closely allied that they may be considered together. There is some (contradicted) testimony showing that when defendants prepared to sell their "Sta-kleen" brush, and to that end gave to a box maker their first order for tooth brush boxes, they did intend to poach on complainant's business, but not, I think, in respect of the "Keepclean" articles. Long prior to the introduction of either tooth brush directly involved in this case, complainant had manufactured, advertised, and sold the "Prophylactic" tooth brush. This is a brush with an open back, and quite closely resembles the "Sta-kleen" brush. Complainant had sold this brush in a peculiar box, which box had been manufactured by the same maker to whom defendants gave their first order for "Sta-kleen" boxes. It may be true that defendants requested the box maker to provide them with a box which in general appearance would imitate the Prophylactic box. But this action is not for unfair competition with the Prophylactic brush, nor was any such imitation box actually made, and we are concerned here only with defendants' "Sta-kleen" box.

This box is (and has been for a period longer than the business life of the "Keepclean" tooth brush) of a slaty bluish color, bearing very distinctive ornamentation which does not in the least resemble that of complainant's brush receptacle. The sole similarity between the two boxes (other than size and shape) is that the words "Keepclean" and "Sta-kleen" are both printed in red, though in wholly different styles of type. In my judgment no person of ordinary intelligence could be deceived into taking one of these boxes for the other, and complainant has adduced no evidence that any one has been deceived as matter of fact. It is shown by one witness that he went into a drug store, asked for a Keepclean brush, was handed a box, did not look at it, and when he returned to his office discovered that he had the "Sta-kleen" article. This might furnish a cause of action against the druggist, under Enoch Morgan's Sons Co. v. Wendover (C. C.) 43 Fed. 420, 10 L. R. A. 283; but there is absolutely no proof that the druggist's misrepresentation was either directly caused by any act of the defendants, was the result of his own confusion with respect to the articles in question, or was due to any motive other than his own dishonest desire to palm off what is perhaps a cheaper article, or at any rate one that he happened to have in stock, on a peculiarly careless and inattentive member of the public. It is therefore to me plain

that defendants' use of the "Sta-kleen" box does not constitute unfair competition.

As to the balance of complainant's case, it is admitted that the mere fact that when the "Sta-kleen" box was introduced there was no such thing as a "Keepclean" tooth brush is not conclusive in favor of the defendants. Collins & Co. v. Oliver Ames & Son Corporation (C. C.) 18 Fed. 561. It is therefore urged that "Keepclean," although descriptive, has been so long used by complainant, and so great a reputation has been built thereon, that an injunction should issue against "Sta-kleen" under Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332, Meyer v. Medicine Co., 58 Fed. 884; 7 C. C. A. 558, Revere Rubber Co. v. Consolidated Hoof Pad Co. (C. C.) 139 Fed. 151, and Von Mumm v. Frash (C. C.) 56 Fed. 830. But, in order to bring this case within either the authority or the reasoning of the above decisions, the use sought to be enjoined must be fraudulent. Where the name upon which the complaining party has built up his business, or by which he has unfortunately chosen to designate it, is descriptive. or geographical, or otherwise invalid under trade-mark law, he cannot prevent another from using the same name, or one nearly the same, if that other uses it "with such indications that the thing manufactured is the work of the one making it as would unmistakably inform the public of the fact." Williams v. Mitchell, 106 Fed. 168, 45 C. C. A. 265.

Complainant's evidence, measured by this standard, fails, in my judgment, to make out a case. There is evidence (above referred to) of a fruitless intention on defendants' part to illegitimately profit by complainant's advertisement and introduction of the word "Prophylactic"; but that is certainly insufficient to warrant a finding even of intent to deceive in respect of "Keepclean." It is admittedly impossible to discover a "Sta-kleen" brush corresponding to the "Keepclean" hair, military, clothes, and nail brushes, and, as above set forth, no one is shown to have been deceived as to the "Keepclean" tooth brush, and I am unable to comprehend how any one can be deceived by defendants' product. In the absence of plain evidence of fraudulent intent or of actual deception, to permit this complainant to enjoin the defendants in respect of a descriptive word is going beyond even the wide limits of the law of unfair competition, and is practically an extension of the law of trade-marks. not only illegal, in view of controlling decisions, but obviously injurious to the public.

Let the bill be dismissed.